Good morning ladies and gentlemen, nice to see everyone. We'll proceed with argument on the first case of the calendar, which is United States v. Ramirez. Peggy Sasso, on behalf of Stefan Ramirez, I would like to reserve two minutes, please. The Supreme Court was crystal clear in Bailey that the government's awesome power to seize individuals in connection with a search warrant is strictly limited to those individuals who are actually on-site at the time they execute the warrant. And it does not extend to individuals who are off-site, such as Ramirez, because if law enforcement could seize anyone who was off-site, that would swallow the general rule that prohibits law enforcement from seizing individuals absent probable cause that they've committed a crime. And here, the FBI acknowledged that Ramirez was not even a suspect at the time that they lured him back to the House. They simply wanted to talk to him because they thought it might be helpful to their investigation. So they came prepared with a premeditated ruse that included a cop car, prop vests that said police on them, designed to exploit the public's trust in their position as law enforcement officials and to trick Ramirez into giving up his Fourth Amendment right to be secure in his person from being seized absent probable cause to believe that he had committed a crime. The FBI's tactics here were a brazen end run around Bailey. And if it's allowed to stand, it would mean that law enforcement could seize any one of us at any time without reasonable suspicion that we had done anything wrong simply by exploiting our trust in law enforcement and tricking us into going somewhere where they're executing a search warrant. That would obliterate our Fourth Amendment right to be secure in our person, and it would also eviscerate the public's trust in law enforcement. So is it your position that he continued to be seized after the pat-down was completed? Yes, Your Honor. I do believe that he would continue to be seized. I don't believe a reasonable person would feel free to not answer the questions. And that's what that to engage in the conversation with law enforcement. And I think when an individual has had their identification seized, their means of transportation seized, their phone, there's FBI agents all over his house. He's in a locked, not a locked room, a room with a door closed, two law enforcement officers with guns blocking his way. They tell him, You're not under arrest. You'll sleep in your bed tonight. But then they don't tell him that he's free not to answer their questions. I think a reasonable person in that situation would want to do exactly what law enforcement was asking them to do in hopes that law enforcement doesn't change their mind and decide to arrest them. I think United States, let's see, Brendan v. California, I think speaks to this issue simply because an individual passively acquiesces in a situation like this, that does not mean that they have voluntarily consented. And in that case, the Supreme Court talked about it's a reasonable person is going to know that they can't simply wander around a site that's being searched and they can't just interfere and go about their own business. So why do you contend the police should have done given the nature of the warrant? They absolutely could have. I'm saying should have. Consistent with the Fourth Amendment. Consistent with the Fourth Amendment, they had a variety of options. If it was as important as it seems to have been to talk to Mr. Ramirez, then they should have executed the warrant at a time when he was actually there. The house was under surveillance. They knew that he had left. His car wasn't there. So they could have done that. Or they could have called him up at work and said, we'd like to talk to you. We have some questions. We're at your house. We're investigating child pornography and you want to come and talk to us. Or they could have shown up at his work and done the same thing. And at that point, he would have been free to decline to speak to them. And that's among a variety of cases. Florida v. Royer, he had the right. At that point, he wasn't even a suspect. So they had no authority to seize him in any capacity at that point in time. They certainly could have asked to speak to him. And so it would be our position that evidence that is derivative of a Fourth Amendment violation should be suppressed. It's tainted. And in this situation, as Justice Alito reminds us in Davis v. United States, where law enforcement's actions are brazen, flagrant, that is where the deterrence value of suppression is at its highest. And it outweighs other considerations here. And I think in order to protect all of our Fourth Amendment rights, it's critical that this court send a message and suppress the evidence at issue here. Do you contest the search of the car as an independent Fourth Amendment violation or as the fruit of the unlawful seizure of Mr. Ramirez, according to your position? The car would not have been there but for the illegal ruse to bring him back. So the only reason that they have access to the car is because of the Fourth Amendment violation. So it would be a fruit of the ruse where law enforcement deliberately misrepresented the nature and purpose of a law enforcement investigation to expand their authority to do what they were otherwise prohibited from doing. So are you saying it was independently an unlawful search or it merely was the fruit of the If that car had been there at the time that they executed the search warrant, they would have been entitled to search it. So because they brought the car there, then it is the product of them bringing anything that they brought there because of their deliberate misrepresentation of their purpose and nature of their investigation is tainted by that Fourth Amendment violation. It would not have been there but for that. So it is the fruit of that conduct. You would agree that your entire argument depends on us finding that the ruse was improper, correct? Yes. I think this circuit's jurisprudence is crystal clear that when law enforcement deliberately misrepresents the nature and purpose of an investigation to expand their authority to do something they are otherwise unable to do, which they absolutely were unable to do under clearly established Supreme Court precedent, Bailey and Summers, that is a Fourth Amendment violation. But you would agree, for example, that if he had just happened to come home, none of this would have been improper under the Fourth Amendment, correct? Absolutely. And the record is clear that the only reason he came home was because of the ruse. The FBI acknowledged that. The district court found that. He would not have been home otherwise. And the warrant specifically covered that vehicle? It covered any vehicle that was on site at the time they were executing the warrant. And did the affidavit that supported the warrant provide a basis for finding probable cause to search vehicles that might be found at the premises? We're not contesting that. So if the vehicle had been there at the time they executed the warrant, we would not. But there was something in the affidavit where the police officer, sort of seemingly knowing what he was doing with the ruse, says that in his experience there would be evidence of this stuff in the car where it could be transported away from the house as opposed to just sitting in the house. That's correct, Your Honor. And they knew exactly which car he was driving. That's established in the record. And they knew it wasn't there when they came to execute the ruse that brought him back from work in his car. You're making a Fifth Amendment claim as well? There certainly is a Fifth Amendment argument here. For all the reasons we just talked about, he was — a reasonable person would not have felt free to leave and not answer the questions for all the reasons I've talked about. And there was no Miranda given. So there is not a voluntary — the interview was not voluntary, which addresses the Fifth Amendment. And then there's the additional prong with respect to the Fourth Amendment, that there was no sufficient act of free will to purge the taint. So both Fourth and Fifth Amendments. Thank you, Counsel. Good morning, Your Honors. May it please the Court, David Gappa for the United States. Briefly, I'm sure the Court noted that there were three issues raised in the defendant's brief. In the government's view of the defense brief in Issue 3, they've conceded that that issue is now moot in light of the Court having received funds, so the restitution payment is not necessary. On Issue 2, we filed a 28-J letter on Friday outlining that this panel — I'm sorry, this Court, after briefing was completed in this case in United States v. Ochoa, addressed the issue that was raised in this case on the supervised release condition. In that case, the language in the condition that was challenged was verbatim to the condition in this. The arguments on appeal were the same, and the panel squarely addressed that issue. So let's get to Issue 1. On Issue 1, law enforcement acted reasonably and never violated any of the defendant's constitutional rights when it conducted a methodical investigation that ultimately confirmed that the defendant had a very substantial amount of very troubling child pornography. The FBI had engaged in multiple undercover transactions. They subpoenaed the Internet service provider to determine the location where this activity was taking place. They conducted some surveillance over a period of months to see who was at the residence, and then they obtained a search warrant, and they executed that on the morning of May 16. So what did the warrant authorize them to do? The warrant authorized search of the premises and any to search for evidence of child pornography. And so there was probable cause for that warrant. It was issued by the magistrate. It was executed that morning. No question. Probable cause for that warrant and the limited scope of that warrant? Correct. And when the agents arrived that morning, it appeared that nobody was present there. The primary case agent determined that he would benefit from questioning the person who had the name on the account for the Internet service. And when nobody was there, the agent started to make some phone calls to try to determine if the occupants could be questioned. Now, one of those phone calls was to someone who had moved out. Suppose they used the ruse to get him to come to the house, knowing that he had moved out, just so that they could then search his car and bring it within the four corners of the warrant. Would that be okay in your view? Well, they actually did implement the ruse on everybody at the beginning when they first had contact. But to answer the question, if the design of the ruse was to bring evidence to the search, that arguably would be a problem. The district court took that view and said, if the intent of the ruse was to expand factually the scope of the warrant, that would be a problem. But then the district It turns on the subjective intent of the officer. So if he has a good intent, it's reasonable under the Fourth Amendment. But if he has a bad intent, it's not? Well, the district court did have a colloquy with the defense on that issue. And the defense seemed to have some shifting view of what their position was. But ultimately, the district court found that the agent testified credibly that his He may have made that factual finding. But as I read his ruling, after the Wren case was discussed at some length with him by defense counsel, he retreated from relying on subjective intent as the basis of his ruling. Am I reading that wrong? I think that's a reasonable reading of the district court proceeding. And the district court, though, at the same time, found that, as a matter of law, that law enforcement is allowed to use deception and trickery and found that, in this case, that it was a reasonable use of that authority. And that as soon as the agent encountered the defendant and had the defendant at the location, just as he had done with the defendant's mother, just as he had done on the phone with the other occupant, once it was apparent to the agent that there was no need to continue with the ruse and that the integrity of the investigation would not be compromised, Agent Ratzlaff very candidly told the defendant, I'm with the FBI. We're here serving a search warrant for child pornography. Are we in the right location? So the ruse ended at that point, and Ramirez responded, yes, you're in the right location. And then Agent Ratzlaff asked, would you like to answer some questions? And then there was a quick pat-down, which the district court found was not an arrest, and that was a brief pat-down for officer safety reasons. Ramirez then agreed to answer questions. He chose the location for the interview. What was the authority for the pat-down? Did that rest on the Summers theory or a Terry theory? It was not articulated by the district court, but it was for officer safety purposes. So it was Summers theory? Yes, an exception under Summers. And so that brief pat-down, even I believe the defense conceded that was not an arrest, and it was for officer safety reasons. And after that happened, the defendant agreed to go into the residence. He chose the location. The agent was concerned about privacy, wanted to have a candid discussion, and they chose a room. There was only one other agent. The main agent removed his body armor. The door was not locked. So how does that differ from Craighead? I'm sorry? How does that differ from Craighead? Well, in Craighead, this court found that there was a coercive environment, that the there was a display of weapons. And there were no display of weapons here? There were other agents, but as the district court found here, it didn't matter to that extent because in the room where the defendant chose to do the interview, there were only two agents. It was a consensual interview. Isn't that the same as what happened in Craighead? They were in the basement in Craighead with two agents, right? There were. So he's in a room with two agents. It's in a basement, but what's the difference? In this setting, this agent told the defendant at the beginning he was not under arrest, that he would sleep in his own bed that night. He asked, is there a place that you need to be, try to make him more comfortable, offer the use of a phone, let him call his employer. But he really was not free to go. As we pointed out, Craighead, if you're being questioned in your own home, you're really not free to go home. He would have been free to leave. We don't know what would have happened. Was the car seized? The vehicle at that point was at the location. We don't know what would have happened. We do know that the victim used his car. Correct. But he was never told he was not free to leave. He never indicated that he wanted to leave. Well, in Craighead, he was told he was free to leave, so that actually makes it a better situation, or a better argument for the government in that case than you have. Right. And this appeal, they've only in the footnote raised the Fifth Amendment issue on the custodial interrogation. So what is your position on whether when he was seized, do you agree that he was seized when he arrived at the property? There is a brief seizure in the sense that there was the pat-down, but that was the only display of force the district court found. So your position was after the pat-down, the seizure ceased. Correct. And at that point, it became a voluntary encounter between Ramirez, who agreed to answer questions, and he was told what the nature of the investigation was. He had an opportunity at that point to decline, to participate in the interrogation. But at that point, they could actually seize and search his car because the officers had brought the car within the scope of the warrant. The car would have been subject to the search warrant at that point, correct? In balancing the Fourth Amendment intrusion on the defendant against the government's interests, that is what this court is charged to do, and that's the balance, the slight intrusion on the defendant in his Fourth Amendment right didn't rise to the level of an unlawful seizure, and the court correctly denied the motion to suppress. Unless there were any other questions, we would ask the court to affirm the conviction. Thank you, Counsel. About a minute and a half. The government acknowledges that Ramirez was seized under Summers, as they have to. This was not an officer's safety in a sense of a Terry search and seizure. They took his phone, they took his keys, his wallet, his phone, and then they subject all of that and the car to a search. That's not a Terry pat-down. And the government correctly admits he was seized under Summers. He would not have been there to be seized under Summers, but for law enforcement deliberately misrepresenting their role and their investigation to lure him back to give up his Fourth Amendment right to be free of unreasonable government seizures. If they had run into him on the street knowing everything they knew about what they thought he was up to, could they have done a Terry stop and said, excuse me, we want to talk to you? And then could they have done a pat-down in connection with that? No, Your Honor, not at that time because they acknowledge he was not even a suspect at that time. Well, that goes to what they subjectively believe. View the objective facts of reasonable suspicion. Didn't they have reasonable suspicion to think he was trafficking and that he was receiving child pornography? I'm going to go with what the FBI said, which specifically said he was not a suspect. They didn't even know if he was the subscriber to the account. They said they'd like to speak to him if he was the subscriber. They did not know that at that time. So, no, I don't believe they had reasonable suspicion. So they could not. They could have approached him and asked to speak with him, and he was free to decline. They did not have reasonable Thank you, counsel. The case is argued to be submitted for decision. Thank you both for your arguments.
judges: Thomas, Wardlaw, Collins